# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

UNITED STATES OF AMERICA,   )
   )
   )
v.   )   Case No. CR408-078
   )
ANNAHIM POMPA,   )
   )
   Defendant.   )

## ORDER

Annahim Pompa has filed a motion to suppress all evidence resulting from the January 26, 2008 traffic stop that led to her arrest for driving under the influence of alcohol on the Fort Stewart military reservation. (Doc. 12.) At the conclusion of the evidentiary hearing on this matter, the Court opined that the traffic stop met constitutional standards (though barely), as the arresting officer had a reasonable suspicion that the vehicle driver was impaired in some manner sufficient to warrant a brief investigatory stop. After further reflection and review of the

caselaw, however, the Court has reached the opposite conclusion. Accordingly, Pompa's motion to suppress is **GRANTED.**

The sole witness at the suppression hearing was Sgt. Michael Chastine of the Fort Stewart police. During the early morning hours of Saturday, January 26, 2008, Sgt. Chastine was parked along Austin Road on Fort Stewart patrolling a four-way stop. At approximately 2:10 a.m., he noticed an SUV some distance away traveling north on Austin Road at an "extremely slow" speed that was well below the posted 20 m.p.h. limit.[1] He observed the slow-moving SUV as it moved toward him for about four minutes and then came to a complete stop about 500 yards away. Sgt. Chastine, however, could not discern whether the SUV was stopped within a traffic lane or whether it had pulled to the shoulder before coming to a halt. He noticed a flickering of the SUV's headlights, as if some activity occurring in front of the vehicle had caused a temporary obstruction of the beams. During this time, no other

---

[1] Sgt. Chastine testified on direct examination that the car appeared to be going 5 to 10 m.p.h. "at the most." On cross, however, he admitted that he was not sure of the car's exact speed, as he was not using radar, although he was confident that it was traveling below the 20 m.p.h. speed limit.

vehicles approached or passed the stopped vehicle. After one or two minutes, the SUV pulled away.

Sgt. Chastine testified that while witnessing this activity, he became concerned that a medical emergency may have been occurring or that the driver may have been confused or intoxicated. He, therefore, decided to stop the vehicle in order to check on the driver's condition and determine why the vehicle had stopped.

When Sgt. Chastine exited the lot where he had been parked, another vehicle temporarily came between his patrol car and the SUV. When he again observed the SUV, it had turned into the parking lot of an elementary school and was now exiting the lot and proceeding in the opposite direction from which it had previously been traveling. After about a block and a half, Sgt. Chastine caught up to the SUV, turned on his blue lights, and stopped the vehicle.

Sgt. Chastine testified that when he approached the driver's side window of the SUV, he detected a strong odor of alcohol coming from the vehicle. Because there were four occupants, Chastine radioed for back-up. While awaiting the arrival of Sgt.

Penn, Sgt. Chastine determined that the SUV's driver was defendant Pompa and secured a records check on her license and the vehicle's registration. Upon his arrival, Sgt. Penn read Pompa the "implied consent" notice and administered three field sobriety tests, all of which the defendant failed. The officers then apprehended Pompa and transported her to the MP station, where she submitted to a breathalyzer and was then charged with DUI on a military reservation.

"'The Fourth Amendment protects individuals from unreasonable search and seizure.'" United States v. Chanthasouxat, 342 F.3d 1271, 1275 (11th Cir. 2003) (quoting United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001)). A traffic stop, which qualifies as a seizure under the Fourth Amendment, is constitutional if it is based upon probable cause or reasonable suspicion to believe either that a traffic violation has occurred, Chanthasouxat, 342 F.3d at 1275, or that the driver is unable to operate a vehicle safely due to some impairment of a non-criminal nature. See Cady v. Dombrowski, 413 U.S. 433, 441 (1973) (noting the extensive regulation of motor vehicles, the

frequency of police-citizen contact involving automobiles, and the fact that many such encounters involve "community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute"); Terry v. Ohio, 392 U.S. 1 (1968) ("Encounters are initiated by the police for a wide variety of purposes some of which are wholly unrelated to a desire to prosecute for a crime."); Nebraska v. Bakewell, 730 N.W.2d 335, 339 (Neb. 2007) (officer entitled to conduct safety check of vehicle that stopped or slowed considerably 5 times within 90 seconds and then pulled off onto shoulder of the road, as it was reasonable under such circumstances for the officer to conclude that something was wrong with driver or his vehicle). Police officers may conduct a brief investigatory stop pursuant to Terry "if they have a reasonable, articulable suspicion based on objective facts that" an individual is engaged in criminal activity. United States v. Powell, 222 F.3d 913, 917 (11th Cir. 2000). A determination of reasonable suspicion is based on the totality of the circumstances, and "[i]t does not require officers to catch the suspect in a crime. Instead, [a]

reasonable suspicion of criminal activity may be formed by observing exclusively legal activity," United States v. Acosta, 363 F.3d 1141, 1145 (11th Cir. 2004) (citations omitted), even if such activity is "seemingly innocuous to the ordinary citizen." United States v. Smith, 201 F.3d 1317, 1323 (11th Cir. 2000). Investigative stops, however, are invalid if based upon only an "unparticularized suspicion or 'hunch.'" Terry, 392 U.S. at 27. "[W]hether reasonable suspicion existed at the time [of the investigatory stop] is a question of law to be determined ultimately by judges, not policemen . . . . [T]he question . . . is not whether a specific arresting officer . . . actually and subjectively had the pertinent reasonable suspicion, but whether, given the circumstances, reasonable suspicion objectively existed to justify such a search." Hicks v. Moore, 422 F.3d 1246, 1252 (11th Cir. 2005) (citing Evans v. Stephens, 407 F.3d 1272, 1280 n. 9 (11th Cir. 2005) (en banc)). With the foregoing principles in hand, we assess Pompa's argument that Sgt. Chastine lacked reasonable suspicion to stop defendant's car.[2]

_____

[2] Although Sgt. Chastine issued Pompa a traffic ticket for impeding the

Again and again courts have recognized that driving well below the speed limit, even late at night, is in and of itself insufficient to furnish reasonable suspicion. See generally Johnson v. Sprynczynatyk, 717 N.W.2d 586 (N.D. 2006) (no reasonable suspicion to stop driver traveling between eight and ten miles per hour in a 25 m.p.h. zone at 12:43 a.m.); Faunce v. State of Florida, 884 So.2d 504 (Fla. Dist. Ct. App. 2004) (no reasonable suspicion to stop truck traveling 10-15 m.p.h. in a 35 m.p.h. zone at 11:00 p.m.); Richardson v. State of Texas, 39 S.W.3d 634 (Tex. App. 2000) (no reasonable suspicion to stop vehicle traveling 45 m.p.h. in a 65 m.p.h. zone at 2:00 a.m.). Most courts recognize that some other indicia of impairment is necessary. See, e.g., State v. Hiatt, 645 S.E.2d 902, at *3 (N.C. Ct. App. 2007) (unpublished table opinion) (finding reasonable suspicion where defendant "was driving 15 m.p.h. under the speed limit and weaving within the lane"); State of Iowa v. Miller, 682 N.W.2d 83, at *1, 3 (Iowa Ct. App. 2004) (unpublished opinion) (finding reasonable suspicion to stop

_____

flow of traffic in violation of O.C.G.A. § 40-6-184, he conceded at the hearing that he never determined that the SUV had stopped in the roadway and therefore had no probable cause basis for conducting a traffic stop. Thus, the stop is governed by Terry's reasonable suspicion standard.

defendant who was traveling below speed limit, stopped 15 feet away from stop line at a traffic light, made an abrupt stop that caused the front of the vehicle to dip, made an extremely slow left hand turn, failed to acknowledge the officer when he pulled up beside her, and was driving "immediately next to the curb of the road" and weaving to avoid parked vehicles); see United States v. Little, 178 F.3d 1297, at *4 (6th Cir. 1999) (unpublished table opinion) (finding stop constitutional where driver had been traveling at "an unusually slow speed," had allowed her speed to fluctuate, and had twice crossed the highway's white shoulder line).

The Court initially concluded that, given the lateness of the hour, the exceptionally slow speed of the SUV and its pausing along (or perhaps in) the roadway for a minute or so pushed this case into the realm of reasonable suspicion. But after further reflection, the Court is now persuaded that defendant's driving pattern—while somewhat unusual—was not sufficiently anomalous or suspicious in character as to furnish justification for an investigatory seizure of this motorist. There is no evidence that the defendant violated any provision of the Georgia traffic laws prior to the stop. While a

Terry stop may rest on less than probable cause, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [an] intrusion . . . upon the cherished personal security" of a free citizen. Terry, 392 U.S. at 21, 25. As noted earlier, driving below the posted speed limit—without more—is generally not deemed sufficient to justify a traffic stop. Similarly, momentarily stopping one's vehicle, even in the roadway, has not been considered an action warranting reasonable suspicion where such a maneuver does not impede or endanger other motorists. See, e.g., Georgia v. Templeman, 492 S.E.2d 902, 904 (Ga. Ct. App. 1997) (no reasonable suspicion where officer observed car that remained stopped for about one minute at a position about 25-50 feet before intersection where traffic light was green, and explaining that "concerns should have been dispelled when [defendant] proceeded to drive normally . . . down the road without incident"); Streicher v. Georgia, 445 S.E.2d 815 (Ga. Ct. App. 1994) (no reasonable suspicion to stop vehicle after it stopped in road and driver and passenger switched seats). Sgt. Chastine quite candidly testified

that all he observed was a slow-moving vehicle that stopped momentarily before starting again. He never saw anything else that would indicate a less-than-safe or impaired driver. Something more than driving very slowly and eventually stopping the car (possibly on the shoulder of the road) for one to two minutes is required in order to find reasonable suspicion. Lacking any further indicia of impairment (e.g., weaving within the lane, crossing over the center or shoulder line, making an abrupt stop or wide turn, or some other form of erratic driving), Sgt. Chastine acted on no more than an unsubstantiated hunch when he stopped the SUV.

Had the defendant been driving 5-10 m.p.h. in a 55 m.p.h. zone, the Court would be considering a very different set of circumstances. See Bakewell, 730 N.W.2d at 373, 377-78. But here, where the posted speed limit was 20 m.p.h., a vehicle traveling at a 5-10 m.p.h. pace is not so out of the ordinary.[3] See Sprynczynatyk, 717 N.W.2d at 590 ("Defendant was traveling 8-10 miles per hour in a 25 mile per hour zone. It is not that unusual to

---

[3] This is particularly true on Ft. Stewart, where (as the Court knows from its long experience in handling traffic cases arising on post) the military police vigorously enforce the Georgia traffic laws. Drivers wary of getting a speeding ticket might very well moderate their speed and drive well under the posted speed limit.

encounter a vehicle driving through a residential or densely populated area at similar speeds which are slower than the posted speed limit.")  To be sure, a car traveling so slowly and making a one to two minute stop in or along the roadway would likely attract the attention of a police officer, who might naturally want to further investigate such a curious situation.  But the desire to investigate does not inevitably warrant an investigatory stop. Where, as here, reasonable suspicion is lacking, the officer may not stop the vehicle immediately but must continue to observe its behavior in an effort to detect some genuine evidence suggestive of impairment before intruding upon the driver's "cherished personal security." Sgt. Chastine acted too hastily when he elected to stop a vehicle without possessing a reasonable, articulable suspicion that the driver had committed a crime or was impaired to the point that she could not operate the vehicle safely.  He was perfectly entitled to investigate his hunch that a vehicle traveling below the posted speed limit was possibly being operated by a drunk or sick driver. He could follow the vehicle for as long as he liked, and if the vehicle stopped of its own accord, he could approach and attempt to engage

the driver in conversation. But he could not blue-light the vehicle based solely on the observations referenced on this record.

The government has failed to establish that the traffic stop met the Fourth Amendment reasonableness standard. Accordingly, Pompa's motion to suppress is **GRANTED**.

**SO ORDERED** this 24TH day of September, 2008.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA